1

2

3

4

5

6

7

8            UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  PAUL SCHULTZ,                          No. 2:19-cv-02468-DAD-KJN

12              Plaintiff,

13       v.                                ORDER GRANTING DEFENDANTS'
                                           MOTIONS TO DISMISS PLAINTIFF'S
14  SAN JOAQUIN COUNTY SHERIFF'S           SECOND AMENDED COMPLAINT
    DEPARTMENT, et al.,
15                                         (Doc. Nos. 28, 29)
              Defendants.
16

17       This matter is before the court on two separate motions to dismiss, one filed on behalf of

18  defendant Universal Protection Services ("UPS"), (Doc. No. 28), and the other filed on behalf of

19  defendants San Joaquin County Sheriff's Department (the "County")[1], Sheriff Steve Moore, and

20  Deputies Ayers, Bingham, Graham, Herrero, Hoskins, Kissell, Padilla, Reyes, Rust, and Whelen

21  (collectively, "County defendants"), (Doc. No. 29-1).  The pending motions were taken under

22  /////

23

24  _____

    [1]  In its pending motion to dismiss, defendant UPS notes that it has been erroneously named as
25  Universal Protection Services and that its correct name is Universal Protection Service, LP.  (Doc.
    No. 28 at 1–2.)  Similarly, in its motion to dismiss, the County notes that it has been erroneously
26  named as San Joaquin County Sheriff's Department and that the correct defendant is the "County
    of San Joaquin".  (Doc. No. 29-1 at 5.)  In a prior order on a motion to dismiss, the court directed
27  the Clerk of the Court to correct the docket accordingly.  (Doc. No. 20 at 2 n.1, n.2.)  However,
    the docket was not updated as directed at that time, likely because those directives were not
28  included in the order clause of that order.  The court will again direct the Clerk of the Court to
    update the docket.

1

1    submission without oral argument by the previously assigned district judge on April 4, 2022.[2]

2    (Doc. No. 35.)  For the reasons explained below, both of the pending motions to dismiss will be

3    granted.

4                                              **BACKGROUND**

5              This case arises from an incident that took place on October 13, 2016, in which the

6    defendant deputies arrested plaintiff after he refused to comply with an order to re-enter through

7    the metal detectors after he entered the San Joaquin County Courthouse, was escorted out of the

8    courthouse, and once again attempted a re-entry.  In his operative second amended complaint

9    ("SAC"), plaintiff alleges as follows.

10   **A.      The Events of October 13, 2016**

11             On October 13, 2016, plaintiff entered the San Joaquin County Courthouse to make an

12   appearance as an attorney on behalf of a client in the traffic division of that court.  (Doc. No. 21 at

13   ¶ 31.)  Defendant UPS, a company charged with maintaining the courthouse entrance's security

14   checkpoints, employed defendants Ahuilar, Moreno, and Latimer.  (*Id.* at ¶¶ 15–18, 28.)  After

15   plaintiff passed through the metal detectors, defendants Ahuilar and Moreno falsely asserted that

16   plaintiff triggered the alarm and requested that he pass through the metal detector once again.  (*Id.*

17   at ¶ 32.)  Plaintiff refused to re-enter through the metal detector and declined to submit to a wand

18   inspection, choosing instead to inform defendant Latimer that the accusations made by Ahuilar

19   and Moreno that he had triggered the alarm were false.  (*Id.* at ¶ 33.)  Plaintiff proceeded to the

20   courthouse basement without complying with the request of defendants Ahuilar and Moreno to

21   repeat his pass through the metal detector.  (*Id.* at ¶ 34.)

22             Defendant Latimer called for assistance from the Sheriff's Department, indicating that

23   plaintiff had not undergone proper security screening.  (*Id.* at ¶¶ 35, 36.)  According to plaintiff,

24   defendant Latimer "knew or should have known of the falsity of the claims that [plaintiff] set off

25   _____

26   [2]  On August 25, 2022, this case was reassigned to the undersigned.  (Doc. No. 36.)  The
     undersigned has endeavored to work through a backlog of inherited submitted motions in civil

27   cases as quickly as possible since returning to the Sacramento courthouse at the time of the
     reassignment.  However, in this case, considerable independent research was required in light of

28   the nature of the briefing submitted by the parties.

                                                       2

1  the metal detector as he had access to the security video that clearly showed plaintiff inside the

2  metal detector without any of the 'metal detected lights' lighting up." (*Id.* at ¶ 81.)

3        Defendants Graham, Bingham, Herrero, Reyes, and Whelen converged in the basement to

4  confront plaintiff, who stood outside the traffic courtroom door. (*Id.* at ¶ 37.) Defendants

5  Bingham, Herrero, Reyes, and Whelen then boxed plaintiff into an elevator and escorted him to

6  the courthouse foyer. (*Id.* at ¶ 38.) Upon returning to the ground floor of the courthouse, when

7  the elevator door opened, at least two additional sheriff deputies were present and assisted in

8  manhandling and shoving plaintiff out the door. (*Id.* at ¶ 39.) Meanwhile, plaintiff was pleading

9  that he had been through the security screening, had no metal on him, and was in the courthouse

10  to represent a client, but to no avail. (*Id.*)

11        When plaintiff attempted to go through the metal detectors again, to demonstrate that he

12  had not triggered them the first time, defendant Kissell grabbed his arm and shoved her hand into

13  his back to try and guide him out the normal exit door. (*Id.* at ¶ 40.) Defendant Whelen

14  intervened, stating that plaintiff's chosen route to exit through a different door was acceptable,

15  and thus defendant Kissell let plaintiff go. (*Id.*)

16        After plaintiff was outside the courthouse, defendant Whelen informed him that he would

17  not be permitted to re-enter, even if he went through security screening. (*Id.* at ¶ 41.) Defendant

18  Whelen asserted that despite several deputies positioning themselves in a "stop" position to

19  prevent his re-entry, plaintiff charged through them, but the deputies "were somehow helpless to

20  stop a 63 year old man from getting past/through them." (*Id.*) Defendant Whelen then

21  announced an intent to arrest, leading defendant Bingham to pull out his handcuffs and start

22  cuffing plaintiff's arms. (*Id.* at ¶ 42.)

23        Defendant Whelen arrested plaintiff without a warrant for the misdemeanor offenses of

24  unlawful bypassing of security, resisting arrest, and battery on a peace officer. (*Id.* at ¶¶ 68, 69.)

25  Many unspecified defendants allegedly made false statements in their reports, stating therein that

26  plaintiff had resisted being thrown out of the courthouse. (*Id.* at ¶ 42.) However, security footage

27  does not support those statements. (*Id.*) Defendant Kissell and other unspecified defendants

28  claimed that plaintiff grabbed defendant Kissell's arm as he was being escorted out of the

courthouse, which they asserted would justify a charge of misdemeanor battery on a peace officer. (*Id.* at ¶ 43.) Again, security footage does not support those claims. (*Id.*) Furthermore, plaintiff alleges that unspecified defendants made oral and written statements encouraging the prosecution of plaintiff for unlawful entry into a courthouse by evading screening. (*Id.* at ¶ 44.)

Following his arrest, plaintiff was taken to the courthouse basement holding area, where defendants Hoskins and Ayers denied him the opportunity to call his lawyer and detained him for over six hours without giving plaintiff the opportunity to post bail. (*Id.* at ¶¶ 46, 76.)

Plaintiff claims that he did not enter the courthouse unlawfully or evade security screening, nor did he commit battery on a peace officer or anyone else. (*Id.* at ¶ 50.) In his SAC, plaintiff does not specify what criminal charges were brought against him, but he does allege that the criminal charges against him were eventually terminated in his favor, and he was ultimately convicted of nothing with respect to this incident. (*Id.*)

**B.     Procedural Background**

On January 16, 2019, plaintiff filed a first amended complaint ("FAC") in San Joaquin County Superior County against defendants alleging federal constitutional violations and state law claims. (Doc. No. 1 at 5.) On December 10, 2019, the County defendants removed the action to this court pursuant to 28 U.S.C. § 1441. (Doc. No. 1.) On January 7, 2022, the previously assigned district judge granted the County defendants' motion to dismiss, dismissing the FAC in its entirety, with leave to amend. (Doc. No. 20 at 7.) In the same order, the court denied defendant UPS's motion to dismiss the FAC as having been rendered moot. (*Id.*)

Plaintiff filed the operative SAC on February 7, 2022.[3] (Doc. No. 21.) In his SAC, plaintiff asserts ten causes of action. Specifically, plaintiff asserts claims under 42 U.S.C. § 1983 for unreasonable seizure of his person in the basement of the courthouse in violation of the Fourth Amendment against defendants Bingham, Graham, Herrero, Reyes, Whelen, Ahuilar, Moreno,

---

[3] In plaintiff's SAC, he no longer names defendants "Deputy Ballard, Deputy Grubb, Deputy Moreno, Deputy Mortensen, and Deputy Weston." Accordingly, the court will direct the Clerk of the Court to update the docket to reflect that defendants Deputy Ballard, Deputy Grubb, Deputy Moreno, Deputy Mortensen, and Deputy Weston were terminated as defendants in this action as of February 7, 2022.

Latimer, UPS, and John Doe #1 (claim 1); violation of his First and Fourteenth Amendment right to access the courthouse against defendants Bingham, Graham, Herrero, Kissell, Reyes, Rust, and Whelen in their individual capacity and a *Monell* liability claim against defendants Moore, Padilla, and San Joaquin County (claim 3); due process deprivation of access to the court without an opportunity to be heard in violation of the Fourteenth Amendment against defendants Bingham, Graham, Herrero, Kissell, Reyes, Rust, and Whelen as individuals and against Moore, Padilla, and San Joaquin County under a theory of *Monell* liability (claim 4); unreasonable arrest in violation of his Fourth Amendment right against defendants Bingham, Graham, Herrero, Reyes, Whelen, Ahuilar, Moreno, Latimer, and John Doe #1 (claim 5); unreasonably prolonged detention in violation of the Fourteenth, Eighth, and Sixth Amendments against defendants Ayers and Hoskins (claim 7); malicious prosecution against defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, and Latimer (claim 9); and judicial deception against defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, and Latimer (claim 10).  (Doc. No. 21.)  Furthermore, plaintiff asserts state law claims for unreasonable seizure of his person in violation of California Civil Code § 52.1 against defendants Bingham, Graham, Herrero, Reyes, Whelen, Ahuilar, Moreno, Latimer, UPS, and John Doe #1 (claim 2); unreasonable arrest in violation of California Civil Code § 52.1 against defendants Bingham, Graham, Herrero, Reyes, Whelen, Ahuilar, Moreno, Latimer, UPS, and John Doe #1 (claim 6); and malicious prosecution against defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, Latimer, and UPS (claim 8).  (*Id.*)

As noted above. defendants filed two separate motions to dismiss the SAC.  First, on March 1, 2022, defendant UPS filed a motion to dismiss, challenging all claims brought against it

/////
/////
/////
/////
/////
/////

1   (the first, second, sixth, and eighth causes of action).[4]  (Doc. No. 28 at 4.)  On March 15, 2022,

2   plaintiff filed an opposition to that motion.  (Doc. No. 30.)  Defendant UPS did not file a reply.

3   On March 9, 2022, the County defendants filed a motion to dismiss, challenging all of plaintiff's

4   claims.  (Doc. No. 29.)  On March 25, 2022, after receiving an extension of time in which to do

5   so, plaintiff filed an opposition to that motion, and the County defendants filed a reply thereto on

6   April 4, 2022.  (Doc. Nos. 33, 34.)

7                                              **LEGAL STANDARD**

8            The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

9   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

10  1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

11  sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

12  F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

13  relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

14  claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

15  the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.

16  Iqbal*, 556 U.S. 662, 678 (2009).

17           In determining whether a complaint states a claim on which relief may be granted, the

18  court accepts as true the allegations in the complaint and construes the allegations in the light

19  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

20  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

21  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

22  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

23  _____

24  [4]  According to the docket, no appearance has been made on behalf of defendants Norma Ahuilar,
    Mathew Moreno, and Greg Latimer, who are alleged to be employees of defendant UPS.  (Doc.

25  No. 21 at ¶¶ 15–18.)  It is unclear whether those defendants have been served with the operative
    SAC in this case.  Nevertheless, in defendant UPS's motion to dismiss, several arguments are

26  advanced related to the insufficiency of allegations against UPS and "its employees."  (*See

27  generally* Doc. No. 28.)  For the reasons discussed below, the court concludes that plaintiff has
    not stated a cognizable claim against defendant UPS and for those same reasons, plaintiff's claims

28  against defendants Ahuilar, Moreno, and Latimer are found to be deficient and will be dismissed
    without leave to amend.

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

"Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008).  To the extent that the pleadings can be cured by the allegation of additional facts, courts will generally grant leave to amend.  *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

The court will now address the sufficiency of plaintiff's allegations with regard to each of his claims, beginning with his federal claims.  The claims are not addressed in sequential order because the court finds that the sequence of the claims as presented in the SAC lack a coherent substantive flow.

### A.   Unreasonable Seizure in the Basement (First Claim)

Plaintiff first asserts a federal § 1983 claim for "unreasonable seizure of person (in the basement)" against defendants Bingham, Graham, Herrero, Reyes, Whelen, Ahuilar, Moreno, Latimer, UPS, and John Doe #1.  (Doc. No. 21 at 14.)  Plaintiff alleges that "[t]he decision to shove Schultz out of the courthouse constituted an unreasonable seizure of person." (*Id.* at ¶ 53.)

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV.  "Probable cause for a warrantless arrest arises when the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe 'that the suspect has committed, is committing, or is about to commit an offense.'" *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37

1  (1979)).  "Probable cause is generally a question for the jury," unless "no reasonable jury could

2  determine that there was a lack of probable cause."  *Id.* at 772–73.

3         The County defendants argue that plaintiff's allegations, accepted as true, show that

4  probable cause existed to stop and detain plaintiff.  (Doc. No. 34 at 2.)  The court agrees.  In his

5  opposition to the County defendants' motion to dismiss, plaintiff argues that he never set off the

6  metal detector, and therefore the officers did not have probable cause to seize him.  (Doc. No. 33

7  at 11.)  However, whether plaintiff set of the metal detector is irrelevant as to whether defendants

8  Bingham, Graham, Herrero, Reyes, Whelen, and John Doe #1 had probable cause to seize

9  plaintiff.  According to plaintiff's own allegations, he "refused to re-enter the metal detector or to

10  submit to a wand inspection" after security guards had stated that he had set off the alarm and

11  asked him to go through the metal detector again.  (Doc. No. 21 at ¶¶ 32, 33.)  Furthermore, it

12  appears from the SAC that those who allegedly "seized" plaintiff had been notified by defendant

13  Latimer that plaintiff had refused to go through security.  Given the "facts and circumstances

14  within the . . . knowledge" of the defendants, by plaintiff's own allegations, the court concludes

15  that no reasonable jury could find a lack of probable cause, and therefore the seizure passes

16  constitutional muster.  *Barry*, 902 F.2d at 773.  Thus, plaintiff's first claim is not cognizable on

17  this basis alone.

18         In its motion to dismiss, defendant UPS argues that plaintiff has not plausibly alleged that

19  it or its employees participated in the seizure of plaintiff.  (Doc. No. 28 at 5.)  In his opposition to

20  that motion, plaintiff argues that the joint action test is applicable, arguing that "[a]lthough UPS is

21  a private company, they were acting in coordination with governmental officials as part of a

22  conspiracy to deprive plaintiff of his protected Constitutional rights and therefore the UPS

23  defendants are subject to suit under § 1983."  (Doc. No. 30 at 4.)  However, the mere provision of

24  information to state actors does not constitute joint action under color of state law.  *See Radcliffe

25  v. Rainbow Const. Co.*, 254 F.3d 772, 783 (9th Cir. 2001) ("A relationship of cause and effect

26  between the complaint and the prosecution is not sufficient, or every citizen who complained to a

27  prosecutor would find himself in a conspiracy."); *Deeths v. Lucile Slater Packard Children's

28  Hosp. at Stanford*, No. 1:12-cv-02096-LJO, 2013 WL 6185175, at *10 (E.D. Cal. Nov. 26, 2013)

8

1   ("[S]upplying information alone does not amount to conspiracy or joint action under color of state

2   law."); *Fed. Agency of News LLC v. Facebook, Inc.*, 395 F. Supp. 3d 1295, 1313 (N.D. Cal. 2019)

3   (finding no joint action where the "Plaintiffs only allege[d] that Facebook provided the

4   government with information").

5        Because plaintiff fails to plausibly allege how defendant UPS and its employees

6   personally participated in causing his alleged injury, if at all, his § 1983 "unreasonable seizure"

7   claim against them fails.  *See Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a

8   person acting under color of state law to be liable under section 1983 there must be a showing of

9   personal participation in the alleged rights deprivation . . . ."); *Ivey v. Bd. of Regents*

10  *of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and conclusory allegations of

11  official participation in civil rights violations are not sufficient to withstand a motion to

12  dismiss.").

13       In sum, the court concludes that plaintiff has not stated a cognizable federal § 1983 claim

14  against any of the named defendants for "unreasonable seizure of person (in the basement)" in

15  violation of the Fourth Amendment.  Moreover, because plaintiff's own allegations serve to

16  defeat such a claim, the court finds that the granting of further leave to amend this claim would be

17  futile.  Thus, plaintiff's first claim will be dismissed, without leave to amend.

18  **B.    Unreasonable Arrest (Fifth Claim)**

19       Plaintiff asserts his fifth claim under §1983 for unreasonable arrest in violation of the

20  Fourth Amendment against defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen,

21  Ahuilar, Moreno, Latimer, and John Doe #1.  (Doc. No. 21 at 19.)

22       According to the allegations of plaintiff's SAC, he was arrested for attempting to re-enter

23  the courthouse against the orders of deputies, having just been escorted out for refusing to comply

24  with security personnel's request to re-enter security screening before he proceeded to the

25  courthouse's basement.  The court need not detail the reasons why plaintiff's alleged actions

26  would constitute probable cause for arrest.  Plaintiff's allegations, taken as true, simply do not

27  suffice as a basis upon which to claim that he was arrested without probable cause.  In other

28  words, in his SAC, plaintiff alleges the existence of probable cause for his arrest, not the lack

1  thereof.  The court finds that plaintiff's § 1983 claim for unreasonable arrest is not cognizable and
2  will also dismiss it without leave to amend.

3  **C.      Right to Access the Courthouse (Third Claim)**

4         In his third claim, brought under § 1983 against defendants Bingham, Graham, Herrero,
5  Kissell, Rust, and Whelen as individuals and against defendants Moore, Padilla, and San Joaquin
6  County under a theory of *Monell* liability, plaintiff alleges that he was denied his right to access
7  the courthouse in violation of his First Amendment "right of access to court" and Fourteenth
8  Amendment "liberty to enter the courthouse."  (Doc. No. 21 at 16.)  The court interprets this
9  claim as plaintiff asserting that he was deprived of his First Amendment right without due
10  process.

11        The First Amendment to the U.S. Constitution provides a constitutional right to petition
12  the government for a redress of grievances, which includes a "reasonable right of access to the
13  courts."  *Hudson v. Palmer*, 468 U.S. 517, 523 (1984); *see also Cal. Motor Transport Co. v.*
14  *Trucking Unlimited*, 404 U.S. 508, 612 (1972) ("The right of access to the courts is indeed but
15  one aspect of the right of petition.").

16        Although a right of reasonable access to the courts exists generally, plaintiff's claim as
17  alleged here is not cognizable.  According to the allegations of plaintiff's SAC, his being denied
18  access to the courthouse stemmed from his initial refusal to go through the metal detector a
19  second time, completely unrelated to any hindrance of his right to petition.  Consequently, the
20  court will also dismiss plaintiff's third claim for right of access to the courthouse without leave to
21  amend.

22  **D.      Deprivation of Access to the Court Without an Opportunity to be Heard (Fourth**
23  **Claim)**

24        In his fourth claim, also brought under § 1983 against defendants Bingham, Graham,
25  Herrero, Kissell, and Rust as individuals and against Moore, Padilla, and San Joaquin County
26  under a theory of *Monell* liability, plaintiff alleges that he was denied his right to access the
27  courthouse without an opportunity to be heard in violation of his Fourteenth Amendment rights.
28  (Doc. No. 21 at 16.)

1    The Due Process Clause safeguards against deprivations of "life, liberty, or property,

2    without due process of law." U.S. Const. Amend. XIV § 1.  "A threshold requirement to a

3    substantive or procedural due process claim is the plaintiff's showing of a liberty or property

4    interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d

5    56, 62 (9th Cir. 1994).  Liberty interests "may arise from the Constitution itself, by reason of

6    guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by

7    state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).

8    In his SAC, plaintiff alleges that defendant Whelen informed him that he was not

9    permitted to re-enter the courthouse even if he went through screening.  Plaintiff asserts that he

10   had a liberty interest in re-entering the courthouse.  (Doc. No. 21 at ¶ 62.)  The court has been

11   unable to locate any legal precedent to support plaintiff's assertion, and plaintiff has failed to

12   provide any such authority in either his SAC or oppositions to the pending motions.  In fact, in

13   the only cases the court has found addressing the issue, district courts have held that there is no

14   constitutionally protected liberty interest in unrestricted access to a courthouse.  *See, e.g.*, *Gessner*

15   *v. Plummer*, No. 3:10-cv-00223, 2011 WL 2712529, at *11 (S.D. Ohio June 1, 2011) ("[The

16   plaintiff points to no state law which creates the liberty interest he claims, to wit, the right to enter

17   a courthouse and move about inside unaccompanied by security personnel . . . . In the absence of

18   state law creating the liberty interest he claims, [the plaintiff] has no procedural due process right,

19   either pre- or post-deprivation, to a hearing.  It is just not the case that the United States

20   Constitution gives persons within the jurisdiction of the States a right to a hearing at which any

21   act taken by a public official must be justified by that public official."), *report and*

22   *recommendation adopted*, No. 3:10-cv-00223, 2011 WL 2711286 (S.D. Ohio July 13, 2011);

23   *Brewer v. U.S. Marshals Courthouse Sec.*, No. 3:15-cv-00497-MCR-EMT, 2015 WL 7731468, at

24   *3 (N.D. Fla. Nov. 12, 2015) ("[S]imply because [the plaintiff] is a member of the public, she has

25   no constitutionally protected liberty interest in unrestricted and unlimited access to a federal

26   courthouse."), *report and recommendation adopted*, No. 3:15-cv-00497-MCR-EMT, 2015 WL

27   7734136 (N.D. Fla. Nov. 30, 2015).

28   /////

1   As such, plaintiff's fourth claim in which he asserts that he was deprived access to the San

2   Joaquin County Courthouse without an opportunity to be heard is found not to be cognizable, and

3   it will be dismissed without further leave to amend.

4   **E.      Unreasonably Prolonged Detention (Seventh Claim)**

5   Plaintiff asserts his seventh claim under §1983 for an unreasonably prolonged detention in

6   violation of the Fourteenth, Eighth, and Sixth Amendments against defendants Ayers and

7   Hoskins.  (Doc. No. 21 at 23.)  The court will examine each alleged constitutional violation

8   separately in analyzing this claim advanced by plaintiff.

9   1.      <u>Eighth Amendment</u>

10   Though not entirely clear from the SAC, in bringing this claim under the Eighth

11   Amendment, plaintiff appears to be attempting to allege that his prolonged detention without a

12   bond hearing violated the Eight Amendment's Excessive Bail Clause.  (*See id.*)  Plaintiff has not

13   alleged that his bail was excessive, only that he was not permitted to post bail within the six hours

14   he was detained after his arrest.

15   The Eighth Amendment prohibits "excessive bail," U.S. Const. amend. VIII, and while

16   the Amendment "says nothing about whether bail shall be available at all," *United States v.*

17   *Salerno*, 481 U.S. 739, 752 (1987), "[a] prompt hearing is necessary" because "a vital liberty

18   interest is at stake," *United States v. Montalvo–Murillo*, 495 U.S. 711, 716 (1990).  A state "must

19   provide a fair and reliable determination of probable cause as a condition for any significant

20   pretrial restraint of liberty, and this determination must be made by a judicial officer either before

21   or promptly after arrest."  *Gerstein v. Pugh*, 420 U.S. 103, 125 (1975).

22   However, it is the Fourth Amendment, not the Eighth Amendment, that requires "a timely

23   judicial determination of probable cause" where law enforcement does not obtain a warrant prior

24   to arrest.  *Id.* at 126; *cf. Fields v. Henry Cnty.*, 701 F.3d 180, 185 (6th Cir. 2012) (holding that the

25   plaintiff had not demonstrated an Eighth Amendment violation, stating "[t]he Eighth

26   Amendment's protections address the amount of bail, not the timing.  There is no constitutional

27   right to speedy bail.").

28   /////

1      Even if construed as a claim brought for a violation of his Fourth Amendment right to a

2    timely probable-cause determination, plaintiff's allegations do not state a cognizable claim in this

3    regard.  The Supreme Court has held that "a jurisdiction that provides judicial determinations of

4    probable cause within 48 hours of arrest will, as a general matter, comply with the promptness

5    requirement of *Gerstein*."  *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991).  While the

6    Supreme Court has not mandated a specific time limit within which the government must conduct

7    a bail hearing, lower courts have found the forty-eight-hour limitation set by the Supreme Court

8    in its decision in *Riverside* to be a useful guidepost.  *See, e.g., Gaines v. Cnty. of Los Angeles*, No.

9    16-cv-05011-TJH-JPR, 2016 WL 11521620, at *2 (C.D. Cal. Oct. 24, 2016) ("'Promptly'

10   generally means within 48 hours.") (quoting *Riverside*, 500 U.S. at 57).

11      In light of the authorities discussed above, plaintiff's seventh claim for an unreasonably

12   prolonged detention in violation of the Eighth Amendment, even if construed as being brought

13   under the Fourth Amendment, does not pass muster, and it too will be dismissed without leave to

14   amend.

15         2.    Fourteenth Amendment

16      Plaintiff also asserts in his SAC that his "prolonged detention" violated his due process

17   rights.  (Doc. No. 21 at 23.)  The Due Process Clause of the Fourteenth Amendment protects

18   against unlawful deprivations of liberty.  *Lee v. City of Los Angeles*, 250 F.3d 668, 683 (9th Cir.

19   2001) (recognizing that the Fourteenth Amendment protects the right to be free from detention or

20   incarceration absent due process).  Only conduct that "shocks the conscience" is cognizable as a

21   due process violation.  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008) (quoting *Cnty. of*

22   *Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)).

23      As the Ninth Circuit has recognized, "the loss of liberty caused by an individual's

24   mistaken incarceration 'after the lapse of a certain amount of time' gives rise to a claim under the

25   Due Process Clause of the Fourteenth Amendment."  *Lee*, 250 F.3d at 683 (quoting *Baker v.*

26   *McCollan*, 443 U.S. 137, 145 (1979)).  In general, such cases fall into two categories:  "(1) the

27   circumstances indicated to the defendants that further investigation was warranted, or (2) the

28   defendants denied the plaintiff access to the courts for an extended period of time."  *Rivera v.*

1    *Cnty. of Los Angeles*, 745 F.3d 384, 390–91 (9th Cir. 2014).

2           "[T]he 'further investigation' cases have involved significant differences between the

3    arrestee and the true suspect." *Id.* at 391.  Here, plaintiff makes no such allegation.  Indeed, the

4    claim he asserts here involves an alleged prolonged detention only.  Furthermore, "the 'denied

5    access' cases have involved significant periods of deprivation." *Id.*  In his SAC, plaintiff only

6    alleges that he was detained in excess of six hours.  He cites no authority for the proposition that

7    this length of a detention rises to the level of a constitutional deprivation.  *See Talib v. Guerrero*,

8    No. 15-cv-03825-JAK-DFM, 2015 WL 7428511, at *9 (C.D. Cal. Nov. 20, 2015) (in dismissing

9    the plaintiffs' Fourteenth Amendment due process claim, noting that the plaintiffs were released

10   within several hours of being taken into custody).

11          Furthermore, neither defendant Ayers nor Hoskins are alleged to have played a role in the

12   probable cause determination and were not obligated to investigate the ground for plaintiff's

13   arrest, assuming a prompt appearance before a judge would occur.  *See Okpoti v. Las Vegas

14   Metro. Police Dep't*, No. 2:15-cv-00110-APG-CWH, 2016 WL 1275607, at *3 (D. Nev. Mar. 31,

15   2016) (granting the defendant's motion to dismiss or alternatively for summary judgment as to

16   the plaintiff's Fourteenth Amendment claim, stating that the "City . . . was not involved in the

17   probable cause determination and it is not required under the law to investigate the basis for the

18   arrest assuming prompt appearance before a judge") (citing *Rivera*, 745 F.3d at 390–91.)

19          Finally, plaintiff does not allege in his SAC that defendant Ayers or Hoskins made a false

20   statement, withheld information, or engaged in any conduct designed to prolong plaintiff's

21   detention.  Thus, plaintiff has failed to allege conduct that "shocks the conscience." *See Talib*,

22   2015 WL 7428511, at *9 (in dismissing the plaintiffs' Fourteenth Amendment due process claim,

23   noting that the plaintiffs made "no allegations that any of the Defendants made a false statement,

24   withheld information, or engaged in any conduct to prolong their detention"); *cf. Shay v. Cnty. of

25   Los Angeles*, No. 15-cv-04607-CAS-RAO, 2015 WL 6513632, at *4 (C.D. Cal. Oct. 26, 2015)

26   (finding that the plaintiff adequately alleged that official conduct "shocked the conscience" where

27   it was alleged that the officer's false statements led to the plaintiff's incarceration for eleven

28   days).

                                                    14

1   For these reasons, to the extent plaintiff's seventh claim is based on the Fourteenth

2   Amendment, it is not cognizable and will therefore be dismissed without leave to amend.

3        3.    <u>Sixth Amendment</u>

4       The right to counsel under the Sixth Amendment attaches when adversary criminal

5   proceedings are initiated against an individual "by way of formal charge, preliminary hearing,

6   indictment, information, or arraignment." *United States v. Gouveia*, 467 U.S. 180, 188 (1984).

7       Here, plaintiff alleges that defendant Ayers wrongfully deprived plaintiff of his right to

8   call an attorney and that defendant Hoskins both wrongfully deprived plaintiff of the right to call

9   an attorney and repeatedly questioned plaintiff after plaintiff had asserted his desire to have

10   counsel present during any questioning.  (Doc. No. 21 at ¶ 76.)  However, because the Sixth

11   Amendment right to counsel had not yet attached, the court finds that plaintiff's seventh cause of

12   action for violation of his rights under the Sixth Amendment fails as a matter of law.

13   Accordingly, to the extent it is based on the Sixth Amendment, the court will dismiss plaintiff's

14   seventh cause of action, without leave to amend.

15   **F.    Malicious Prosecution (Ninth Claim)**

16       Plaintiff's ninth claim is brought under § 1983 against defendants Bingham, Graham,

17   Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, and Latimer for malicious prosecution.  (Doc.

18   No. 21 at 23.)

19       For a § 1983 malicious prosecution claim, "[f]ederal courts rely on state common law" for

20   the elements of the claim.  *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019).

21   "California law requires a plaintiff . . .  to establish 'that the prior action (1) was commenced by

22   or at the direction of the defendant was pursued to a legal termination in his, plaintiff's favor; (2)

23   was brought without probable cause; and (3) was initiated with malice,'" and that the prosecution

24   was for the purpose of denying the plaintiff equal protection or another specific constitutional

25   right.  *Id.* (citation omitted).

26       Actions for malicious prosecutions are not limited to suits against prosecutors; they may

27   also be brought against others acting under the color of state law who have wrongfully caused the

28   charges to be filed.  *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119, 1126–27 (9th Cir. 2002).

"Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004).  To overcome the presumption of prosecutorial independence, a plaintiff must allege facts suggesting that the defendants "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

Based on the court's review of plaintiff's SAC, there are no allegations indicating that the prosecutor's independence in filing charges was improperly influenced by defendants.  In fact, there are no allegations that defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, or Latimer had any communication with the prosecutor's office.  *See Tojek v. City of Blaine*, No. 2:21-cv-00426-DGE, 2021 WL 6125823, at *5–6 (W.D. Wash. Dec. 28, 2021) (dismissing the plaintiff's malicious prosecution claim because there were no allegations indicating that the defendants improperly influenced the prosecutor's independence in filing charges).  Accordingly, plaintiff's ninth claim will also be dismissed without leave to amend.

## G.        Judicial Deception (Tenth Claim)

In his tenth cause of action, plaintiff asserts a judicial deception claim under § 1983 against defendants Bingham, Graham, Herrero, Kissell, Reyes, Whelen, Ahuilar, Moreno, and Latimer.  (Doc. No. 21 at 25.)

In their motion to dismiss, the County defendants argue that they are unfamiliar with this cause of action and that, without reference to a particular constitutional amendment, they cannot provide the court any legal analysis of the claim or prepare a defense to it.  (Doc. No. 29-1 at 13.) However, it appears to the court that plaintiff may be attempting to assert a Fourteenth Amendment due process claim, based on the Ninth Circuit's decision in *Devereaux v. Abbey*, 263 F.3d 1070 (9th Cir. 2001), in which the court held that "there is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."  *Id.* at 1074–75; *see also Spencer v.*

1   *Peters*, 857 F.3d 789, 793 (9th Cir. 2017) ("The Fourteenth Amendment prohibits the deliberate

2   fabrication of evidence by a state official."); *Morse v. County of Merced*, No. 1:16-cv-00142-

3   DAD-SKO, 2017 WL 2958733, at *10 (E.D. Cal. July 11, 2017) (discussing cases involving

4   § 1983 claims of judicial deception).

5           To state a § 1983 claim for deliberate fabrication of evidence, the plaintiff must allege

6   facts suggesting that "the fabricated evidence was the cause in fact and proximate cause of his

7   injury." *Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018); *see*

8   *also Theodoropoulos v. Cnty. of Los Angeles*, No. 2:19-cv-00417-JGB-KES, 2020 WL 5239859,

9   at *4 (C.D. Cal. Jul. 17, 2020) ("[F]abrication of evidence is not a constitutional violation unless

10  the fabricated evidence played a material role in the plaintiff's prosecution.").  Being criminally

11  charged based on fabricated evidence is sufficient to constitute an injury; a plaintiff need not

12  allege that they were convicted of the charges.  *Id.*

13          Upon reviewing the SAC, the court finds plaintiff's allegations to be unclear regarding

14  which crimes he was actually charged with, as opposed to crimes plaintiff was merely accused of

15  having committed when arrested.  While plaintiff alleges that defendants arrested him on

16  allegations of unlawfully bypassing courthouse security, resisting arrest, and battery on a peace

17  officer, and that certain defendants made false claims to encourage his prosecution for those

18  criminal offenses, he fails to specify the charges that were referred for criminal prosecution.  In

19  fact, in his opposition to defendant UPS's motion to dismiss, plaintiff acknowledges that he failed

20  to "expressly state what the criminal charges were" in his SAC.  (Doc. No. 30 at 9.)  The SAC

21  therefore fails to state a cognizable claim for judicial deception.  *See Green v. Phillips*, No. 1:23-

22  cv-01277-BAM, 2023 WL 8544600, at *4 (E.D. Cal. Dec. 11, 2023) (dismissing the plaintiff's

23  deliberate fabrication of evidence Fourteenth Amendment due process claim, stating, "[the]

24  Plaintiff does not allege that his was referred for criminal prosecution. While in claim 1, [the]

25  Plaintiff alleges 'false criminal charges,' he does not allege any facts regarding the charges or that

26  he was deprived of liberty as a result thereof") (citation omitted).

27          Plaintiff asks for leave to amend to cure this deficiency, and he represents that in an

28  amended complaint, he would include allegations that he was charged with "Penal Code § 148

17

(resist, delay, obstruct peace officer in performance of duties) and Penal Code § 602y (trespass)." (Doc. No. 30 at 10.)  However, the court finds that the granting of leave to amend as to this claim would be futile because, based on the allegations of his SAC, plaintiff would be unable to allege that the purportedly false statements were the cause-in-fact and proximate cause of his arrest on either charge.  As mentioned above, plaintiff alleges that he was arrested after being escorted out of the courthouse for refusing to go through security screening and attempting to re-enter despite the deputies' commands not to.  Thus, plaintiff cannot allege facts showing that "but for" the alleged fabricated statements, he would have evaded prosecution.  *See Cox v. United States*, No. 8:16-cv-01222-CJC-KES, 2019 WL 297982, at *13 (C.D. Cal. Jan. 22, 2019) (dismissing the plaintiff's deliberate fabrication of evidence claim because the "Plaintiff [could not] allege facts showing that but for the fabricated license plate sighting, he would have evaded prosecution"); *report and recommendation adopted*, 2019 WL 295762 (C.D. Cal. Jan. 23, 2019).

Accordingly, the court will also dismiss plaintiff's tenth claim of judicial deception without leave to amend.

**H.     State Law Claims (Second, Sixth, and Eighth Claims)**

"Where all federal claims are dismissed in an action containing both federal and state law claims, a federal court may decline to exercise supplemental jurisdiction over the remaining state law claims."  *Tennyson v. Cnty. of Sacramento*, No. 2:19-cv-00429-KJM-EFB, 2020 WL 4059568, at *7 (E.D. Cal. July 20, 2020).

Because the court will dismiss all of plaintiffs' federal claims without leave to amend, the court declines to exercise supplemental jurisdiction over plaintiffs' state law claims.  Plaintiff's state law claims will therefore be dismissed without prejudice to plaintiff bringing those claims in state court.

## CONCLUSION

For the reasons explained above,

1.      Defendants' motions to dismiss plaintiff's second amended complaint (Doc. Nos. 28, 29) are granted, as follows:

/////

       a.     Plaintiff's federal claims brought in this action are dismissed without leave to amend;

       b.     Because the court declines to exercise supplemental jurisdiction over plaintiff's state law claims, those claims are dismissed, but without prejudice to plaintiff bringing an action asserting those claims in state court;

2.     This action is dismissed;

3.     The Clerk of the Court is directed to update the docket to reflect that defendants Deputy Ballard, Deputy Grubb, Deputy Moreno, Deputy Mortensen, and Deputy Weston were terminated from this action as of February 7, 2022;

4.     The Clerk of the Court is directed to update the docket to reflect that the correct name for defendant Universal Protection Services is Universal Protection Service, LP;

5.     The Clerk of the Court is directed to update the docket to reflect that the correct name of defendant San Joaquin County Sheriff's Department is County of San Joaquin; and

6.     The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  __January 2, 2024__            _Dale A. Drozd_

DALE A. DROZD
UNITED STATES DISTRICT JUDGE